UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
IOAN GHILDUTA

                 Plaintiff,

     -against-                                04 CV 7494 (BSJ) (GWG)

THE TRUMP CORPORATION and MICHAEL P.        ECF Case
FISHMAN, as President of LOCAL 32B-32J,
SERVICE EMPLOYEES INTERNATIONAL
UNION, AFL-CIO

                 Defendants.
------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## LOCAL 32BJ'S MOTION FOR SUMMARY JUDGMENT

Office of the General Counsel
By: Katchen Locke, Esq. (KL 3724)
Associate General Counsel
Service Employees International
Local 32BJ, AFL-CIO
101 Avenue of the Americas
New York, New York 10013
Phone: (212) 539-2941
Fax: (212) 388-2062

Attorneys for Defendant Local 32BJ

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................... iii

I. PRELIMINARY STATEMENT ............................................................ 1

II. STATEMENT OF UNCONTESTED FACTS ...................................... 1

    A.    Plaintiff's Complaint.............................................................. 1

    B.    Plaintiff's Employment with Trump.................................... 3

    C.    The Collective Bargaining Agreement
          and Grievance and Arbitration Process.............................. 4

    D.    The Handyman Position........................................................ 5

    E.    Mr. Ghilduta's December 20, 2002 Discharge .................... 5

    F.    Mr. Ghilduta's Discharge Grievance and Arbitration.......... 6

    G.    Other Matters ....................................................................... 9

III. ARGUMENT

    A.    Summary Judgment Standard .............................................. 10

    B.    Mr. Ghilduta's Duty of Fair Representation Claims Fail ................... 11
          as a Matter of Law

        1. Failure to Ensure Witnesses Appearance at the
           Arbitration Hearing............................................................. 12

        2. Delay in Arbitration Proceedings and Mr. Cordello's Failure
           to Object to Employer's Request for an Adjournment ...................... 14

        3. Failure to Challenge Employer's Violation of 5-Day
           Termination Notice Requirement ....................................... 14

        4. Mr. Foti's Failure to Obtain the Videotape and Advice to
           Ghilduta to Stay Away from the Building ......................... 15

        5. Failure to Investigate Plaintiff's Claims of Bribery
           by Trump Supervisors......................................................... 15

6. The Union's Bribe-taking ................................................................. 16

7. The Union's Failure to Remove Foti as Ghilduta's Delegate ............. 16

8. The Union's Failure to Remove Arbitrator Anner ............................. 17

D.      Plaintiff's Claim for Punitive Damages Against Local 32BJ Fails
        as a Matter of Law .......................................................................... 18

IV. CONCLUSION ...................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65 (1991)..................................................... 11

*Anderson v. Liberty Lobby*, 477 U.S. 242 (1986) ....................................................... 10

*Arteaga v. Bevona, as President of Local 32BJ*, 21 F.Supp.2d
198 (E.D.N.Y. 1998).................................................................................. 12, 13, 15

*Badlam v. Reynolds Metals Co.*, 46 F.Supp.2d 187 (N.D.N.Y. 1999) ....................... 14

*Barr v. United Parcel Service, Inc.*, 868 F. 2d 36 (2d Cir. 1989),
*cert. denied*, 493 U.S. 975 (1989)............................................................... 1, 11, 12, 16

*Bellsouth Telecomm., Inc. v. W.R. Grace & Co.*, 77 F.3d 603
(2d Cir. 1996).................................................................................................10, 11

*Carrion v Local 32B-32BJ*, 2005 U.S. Dist. LEXIS 4417
(S.D.N.Y. 2005) .................................................................................................14

*Cook v. Pan Am. World Airways, Inc.*, 771 F.2d 635 (2d Cir. 1985) ........................11

*Ghartey v. St. John's Queens Hosp.*, 727 F. Supp. 795 (E.D.N.Y. 1989) .................17

*Guzman v. Local 814, Int'l Bhd. of Teamsters*,
1984 U.S. Dist. LEXIS 14799 (S.D.N.Y. 1984)........................................................17

*Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554 (1976).......................................11

*International Brotherhood of Electrical Workers v. Foust*,
442 U.S. 42 (1979)..............................................................................................17

*Kavowras v. New York Times Co.*, 2004 U.S. Dist. LEXIS 14266
(S.D.N.Y. 2004) ..................................................................................................17

*Martinez v. Amalgamated Transit Union, Local 1056*, 2005 U.S. Dist.
LEXIS 12252 (E.D.N.Y. 2005) ............................................................................12,13

*Phillips v. Lexon Hill Hosp.*, 673 F.Supp. 1207 (S.D.N.Y. 1987)............................12, 13,14

*Raskin v. Wyatt Co.*, 125 F.3d 55 (2d Cir. 1997).......................................................10

*Regan v. Soft Drink and Brewery Workers Union, Local 812*,

1995 U.S. Dist. LEXIS 4221 (S.D.N.Y. 1995) ............................................................12, 13

*Saviano v. Local 32B-32J*, No. 96 CV 8136  (S.D.N.Y. 2002) .................................. 14

*Smith Drug, Chemical Cosmetic, Pastics and Affiliated Indus. Warehouse
Employees Local 815*, 943 F.Supp. 224 (E.D.N.Y. 1996).......................................... 11,16

*Tran v. Tran*, 847 F.Supp. 306, (S.D.N.Y. 1994),
*rev'd on other grounds*, 54 F.3d 115 (2d Cir. 1995)................................................... 16

*Vaca v. Sipes*, 386 U.S. 171 (1967) ........................................................................ 11

*Vargas v. Hill*, 152 F. Supp. 2d 315 (S.D.N.Y. 2001) ................................................. 11

*White v. White Rose Food,* 237 F.3d 174 (2d Cir. 2001)............................................. 11

## **RULES**

Rule 56 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.") ............................ 1, 10

## **STATUES**

Section 301 of the Labor Management Relations Act ("LMRA"),
29 U.S.C. §185.......................................................................................................... 1

## I.   PRELIMINARY STATEMENT

Defendant Michael P. Fishman, as President of Local 32B-32J, Service Employees International Union, AFL-CIO ("Local 32BJ" or "Union") submits this memorandum of law in support of its motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.") to dismiss the Amended Complaint filed by Plaintiff Ioan Ghilduta ("Plaintiff" or "Mr. Ghilduta").

As explained below, summary judgment should be granted because the basis for Mr. Ghilduta's claims concern tactical decisions made by the Union, and alleged procedural irregularities at the arbitration hearing, none of which are sufficient as a matter of law to support a finding that the Union breached its duty of fair representation.  *Barr v. United Parcel Service, Inc.*, 868 F. 2d 36, 43 (2d Cir. 1989), *cert. denied*, 493 U.S. 975 (1989).

## II.   STATEMENT OF UNCONTESTED FACTS

### A.   Plaintiff's Complaint

On August 10, 2004, Mr. Ghilduta filed an action in the New York State Supreme Court, County of New York alleging *inter alia* that his employer, Defendant Trump Corporation ("Trump" or "Employer"), discharged him in violation of the collective bargaining agreement between Trump and Local 32BJ.  His action also alleges that the Union breached its duty of fair representation by failing to adequately represent him, including during his discharge arbitration. *See* August 10, 2004 Complaint.  Although the Complaint makes no reference to any specific statute, it is styled as a hybrid action under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §185.  Defendants removed the action to this Court on September 21, 2004.  On March 10, 2005, Plaintiff filed an Amended Complaint to add a jury trial demand. *See* March 10, 2005 Amended Complaint, ¶3.

The Amended Complaint alleges that Mr. Ghilduta was employed since 1994 by Trump at 721 Fifth Avenue, New York, New York. *Id*. at ¶9.  He claims that he paid his supervisor, George Gjieli, the building resident manager, $1500 in order to be hired. *Id*. at ¶10.  Mr. Ghilduta alleges that on December 20, 2002 he told Richie Ukaj, the resident manager who replaced Mr. Gjieli, that he was going to expose the alleged bribery. *Id*. at ¶20.  Plaintiff alleges that also on December 20, 2002, Mr. Ukaj fired him unjustly, in violation of the collective bargaining agreement between Trump and Local 32BJ. *Id*. at ¶¶21, 24.  He asserts that Trump failed to furnish him with reasons for the discharge within five days, in violation of the collective bargaining agreement. *Id*. at ¶25.  Plaintiff further alleges that he sought a promotion to the handyman position in the building, but, "upon information and belief," was denied the position because he failed to offer Mr. Gjieli money. *Id*. at ¶¶13-17.

The Amended Complaint alleges that the Union failed to adequately represent Mr. Ghilduta during its investigation of his discharge grievance, including by failing to investigate his claims of bribery, and failed to adequately represent him during the discharge arbitration. *Id*. at ¶¶29-35.  Plaintiff contends that the arbitration hearing took too long to complete, that the Union attorney, Justin Cordello, failed to object to a hearing adjournment request by Trump, and that Mr. Cordello "did nothing to represent Plaintiff" during the June 17, 2004 hearing. *Id*. at ¶¶31, 33, 34.  In his deposition, Ghilduta explained that the latter allegation refers to Mr. Cordello's alleged failure to object to the employer's adjournment request, and to Mr. Cordello's alleged failure to ensure that tenants and co-workers testify at the hearing.  Ghilduta Dep. 276-77.  By alleging in paragraph 31 of the Amended Complaint that "[f]our arbitration hearings were held upon plaintiff's grievance between May 2003 and May 2004.  No resolution had been

2

reached," Plaintiff explained that he meant that the arbitration hearings had not concluded by May 2004. *Id.* at 265-66.

In addition to the allegations in the Amended Complaint, at his deposition Mr. Ghilduta asserted the following as the sole additional bases for his claims that Local 32BJ failed to represent him: 1) Union staff accepted bribes; 2) the Union failed to enforce the requirement in the collective bargaining agreement that employers provide discharged employees a written statement of the basis for their termination within five days of termination; 3) the Union delegate, Ed Foti, failed to obtain a copy of videotape footage of the lobby in 721 Fifth Avenue from December 20, 2002; 4) Mr. Foti failed to investigate Ghilduta's claims of bribery to Trump supervisors; 5) Mr. Foti advised Mr. Ghilduta after he was fired that he should not go to 721 Fifth Avenue; 6) the Union refused to remove Mr. Foti as Mr. Ghilduta's delegate; and 7) the Union failed to have Arbitrator Anner replaced for Mr. Ghilduta's arbitration hearing. *Id.* at 284-85, 297-308.

**B.     Plaintiff's Employment with Trump**

Defendant Trump employs the building service workers at the apartment building located at 721 Fifth Avenue West, New York, New York. *Id.* at 14-16; Foti Aff. ¶4.  Plaintiff Ioan Ghilduta was employed by Trump as an elevator operator at 721 Fifth Avenue until December 20, 2002.  Ghilduta Dep. 15; Foti Aff. ¶4.  Ghilduta worked the 3:00 p.m. to 11:00 p.m. shift on that day.  Ghilduta Dep. 19.

Ghilduta was hired by George Gjieli, who was the Resident Manager of 721 Fifth Avenue.  *Id.* at 105.  Mr. Gjieli was Ghilduta's immediate supervisor until Mr. Gjieli left his job in the beginning of 2002, eight or ten months before Plaintiff was fired.  *Id.*  Mr. Gjieli was

replaced by Richie Ukaj, who was Ghilduta's immediate supervisor until December 20, 2002, when Ghilduta was terminated. *Id*. at 85; First Amended Complaint, ¶21.

Nancy Lara is the building manager for Trump at 721 Fifth Avenue. Ghilduta Dep. 156.

### C.   The Collective Bargaining Agreement and Grievance and Arbitration Process

Trump and Local 32BJ were parties to a collective bargaining agreement effective April 21, 2000 through April 20, 2003 ("CBA") that governed the terms and conditions of Ghilduta's employment with Trump. Ghilduta Dep.181; Foti Aff. ¶5 & Ex. 1.

Ed Foti is employed by Local 32BJ as a Union delegate whose duties include enforcing the CBA between Trump and the Union. Foti Aff. ¶2. Foti was Ghilduta's Union delegate until Ghilduta was discharged. *Id*. at ¶¶2, 4; Ghilduta Dep. 186.

Under the CBA, violations of the CBA are contested through the grievance and arbitration process. Foti Aff., Ex. 1, Art. V-VI, pp. 12-18; Ghilduta Dep. 181-82. Pursuant to the CBA, employees may not be discharged "unjustly." Foti Aff., Ex. 1, Art. IV, p. 12.

When a member files a grievance to contest an alleged contract violation, the Union delegate investigates the grievance to determine whether it has merit. Foti Aff. ¶3. The investigation includes discussing the matter with the member, reviewing the member's personnel file (which may include prior disciplinary warnings) obtained from the employer, and, if appropriate, interviewing witnesses. *Id*. In accordance with the CBA, the Union attempts to resolve the grievance before proceeding to arbitration by holding a grievance meeting with employer. *Id*.

Arbitration hearings under the CBA are conducted by the Office of the Contract Arbitrator ("OCA"). Cordello Aff. ¶11. Hearing dates are scheduled by the OCA, not by the

4

Union or the employer. *Id.* at ¶11. While the CBA provides that "no more than one adjournment per party shall be granted by the Arbitrator without the consent of the opposing party," the usual practice of the OCA arbitrators is to grant additional adjournments upon a showing of good cause. Foti Aff., Ex. 1, Art. IV, p. 15; Cordello Aff. ¶12. Employees do not have the ability to object to an arbitration adjournment request. Only parties to the CBA, the employer and the Union, may do so. Foti Aff., Ex. 1, Art. IV, p.15.

**D.    The Handyman Position**

Plaintiff did not file a grievance with the Union concerning the handyman position at 721 Fifth Avenue he allegedly applied for and was denied. Ghilduta Dep. 168. Plaintiff did not complain to Mr. Foti, or anyone else at the Union, that he was denied the handyman position. *Id.*

**E.    Mr. Ghilduta's December 20, 2002 Discharge**

Ghilduta was fired on December 20, 2002. Complaint, ¶20. His shift that day started at 3:00 p.m. Ghilduta Dep. 18. At that time, Ghilduta was supposed to be in the lobby for the change of shift and relieve a co-worker. *Id.* at 18-19. Ghilduta was in Ukaj's office at 2:45 p.m. *Id.* at 21. He then left Ukaj's office and went to the lunchroom and opened envelopes from tenants with cards and money in them, and discussed them with co-workers. *Id.* at 24, 28, 34-36, 40. Then Ukaj came to the lunchroom and told Ghilduta to go to work, to which Ghilduta responded that he had two more envelopes to open, and continued to open the last two envelopes. *Id.* at 40-42. Ghilduta does not know whether it was after 3:00 p.m. when he left the lunchroom to go to work. *Id.* at 47- 48.

About 10 or 15 minutes after Ghilduta started working in the lobby, he was called to Ukaj's office on the 29th floor. *Id.* at 50, 52-53. Ukaj told Ghilduta that he was suspended, and to go home, after which Ghilduta stated to Mr. Ukaj that he was going to tell the vice president

5

about "all the abuse, everything that was going on." *Id*. at 91-93. From Ukaj's office, Ghilduta went back to the lobby, despite the fact that Ukaj had told him to go home. *Id*. at 95. Ghilduta stayed in the lobby for about an hour and twenty minutes, and then Ukaj came down to the lobby and ordered security to have Ghilduta removed from the building. *Id*.

Ghilduta never told Ukaj about George Gjieli's alleged bribery practices. *Id*. at 142-143.

### F.    Mr. Ghilduta's Discharge Grievance and Arbitration

Prior to his discharge, Plaintiff never had any need to seek the Union's assistance, and therefore had not sought the Union's assistance. *Id*. at 184. He learned that he could file a grievance for work place problems when he was fired by asking another worker, Ioan Bitis. *Id*. at 181-82.

Ghilduta came to the Union shortly after he was fired and met with Mr. Foti. *Id*. at 186-87; Foti Aff. ¶¶6-7. He told Mr. Foti his version of what happened on December 20, 2002. Ghilduta Dep. 188-89; Foti Aff. ¶7. Mr. Foti advised him to file a grievance, and said he would contact Nancy Lara to see if she would agree to reinstate him. Ghilduta Dep. 189, 191-93.

Mr. Foti further investigated the grievance by requesting and reviewing Mr. Ghilduta's personnel file. As part of his January 14, 2003 information request, Mr. Foti asked for any documents, including videotapes, which form the basis of the employer's disciplinary action. Trump did not provide any tapes in response. Foti Aff. ¶9 & Ex. 3.

Mr. Foti met with Ghilduta, Lara and Ukaj on or about April 9, 2003 in an attempt to settle the grievance. Ghilduta Dep. 200-201; Foti Aff. ¶13. At this meeting, Mr. Foti requested that Trump reinstate Ghilduta, but Trump offered only a monetary settlement, which Mr. Ghilduta rejected. Ghilduta Dep. 201-202; Foti Aff. ¶13.

Mr. Foti spoke with Plaintiff several times, in person and over the phone about his discharge.  Ghilduta Dep. 195; Foti Aff. ¶7.  According to Mr. Ghilduta, during one of these conversations, Plaintiff told Mr. Foti that he had paid to get his job, and gave money on a couple of other occasions to his employer.  Ghilduta Dep. 193, 197.  Mr. Foti replied that Mr. Ghilduta would need to provide proof of the alleged bribe-taking.  *Id.* at 197.  Mr. Ghilduta never offered to provide, nor provided any proof to Foti of the alleged bribes.  *Id.* at 214.  Mr. Ghilduta did not file a grievance concerning the alleged bribe-taking, nor one claiming that he was fired for threatening to expose alleged bribe-taking.  Foti Aff. ¶15 & Ex. 2; Ghilduta Dep. 306-09.

Mr. Ghilduta alleges that Mr. Foti required him to sign a document, which he claims Mr. Foti thereafter refused to give to him.  Ghilduta Dep. 217-18.  However, Mr. Ghilduta admits that he did not object to signing the document, and that he did not read the document.  *Id.*  Mr. Foti did not threaten him for refusing to do so, or do anything else that made Plaintiff believe he could not refuse to sign it.  *Id.* at 219.  Mr. Ghilduta could have refused to sign the document. *Id.*  Mr. Ghilduta is unaware of any harm that came to him as a result of Mr. Foti allegedly refusing to give him a copy of the document.  *Id.* at 205-06.

Justin Cordello was one of the attorneys assigned by Local 32BJ to Mr. Ghilduta's discharge arbitration hearing.  *Id.* at 263.  He and Mr. Ghilduta met and prepared prior to the hearing.  *Id.*; Cordello Aff. ¶6.  Mr. Ghilduta testified at the arbitration hearing, and told the arbitrator about the alleged bribe-taking.  Ghilduta Dep. 247, 289-292; Cordello Aff. ¶9. Plaintiff is unable to identify any information about which he wanted to testify at arbitration but was prevented from testifying about.  Ghilduta Dep. 292.

Richie Ukaj testified at the hearing on behalf of Trump, and was cross-examined by Mr. Cordello.  Ghilduta Dep. 292-93; Cordello Aff. ¶10.  Mr. Ghilduta is unable to identify any

7

questions he wanted Mr. Cordello to ask on cross-examination but Mr. Cordello failed to ask. Ghilduta Dep. 297.  Nancy Lara testified on behalf of Trump as a rebuttal witness, and was cross-examined by Ann Schulman, who was the Union's attorney on the last day of the arbitration hearing.  *Id*. at 293.  Plaintiff is unable to identify any questions he wanted Ms. Schulman to ask on cross-examination but she failed to ask.  *Id*. at 294.

On or about June, 2004, Plaintiff sent a letter to Mr. Cordello requesting that he ensure that the tenants Mr. Ghilduta subpoenaed appear at the hearing.  *Id*. at 268-69.  The subpoenaed tenants were not witness to any of the events that lead to Mr. Ghilduta's discharge.  *Id*. at 272. Mr. Ghilduta wanted them to testify as to his character.  *Id*. at 269, 272-73.  Mr. Cordello explained to Mr. Ghilduta that it would not likely be helpful to force the tenants to show up because, in his experience, if tenants do not come voluntarily, it is because they do not have helpful information to offer.  Cordello Aff. ¶8.  Mr. Ghilduta also wanted two of his co-workers, Bernard Quinn and Willie Bautista, to testify on his behalf because Quinn was allegedly present in the lobby on December 20, 2002, and Bautista was present in the 29th Floor lunch room on that day.  Ghilduta Dep. 273-74, 347-350.  However, Ghilduta did not serve either of them with subpoenas.  *Id*. at 347-349.  Ghilduta decided not to serve Mr. Quinn because he heard that Trump was going to call him to testify on its behalf.  *Id*. at 349.  Mr. Ghilduta did not talk to either Mr. Quinn or Mr. Bautista about the events that lead to his discharge, and therefore does not know whether they would support his version of what happened that day.  *Id*. at 351-52.

Mr. Ghilduta's discharge hearing was conducted over several hearing dates.  On the first date, July 17, 2003, the company was granted an adjournment as of right.  On the second date, August 11, 2003, another attorney from Cordello's office, Maura Breen, was assigned to the case.  Cordello Aff. ¶13; Romero Aff. ¶3.  Over Ms. Breen's objection, the arbitrator granted

8

Trump an adjournment. Romero Aff. ¶3. On the third and fourth hearing dates, December 2, 2003 and March 22, 2004, the hearing was held, but did not finish within the time allotted by OCA, and was therefore continued to another date. Cordello Aff. ¶14. On one of those dates, the hearing was adjourned because Mr. Ghilduta objected to having Mr. Cordello continue as the attorney, and requested time to find a private attorney. However, Plaintiff subsequently declined to find a private attorney. *Id.* During the March 22, 2004 hearing, Trump stated that they would be calling two rebuttal witnesses, including Bernard Quinn. *Id.* On the fifth date, June 17, 2004, the employer requested another adjournment. Because Trump had been granted two adjournments already, Cordello objected. Over his objection, the arbitrator granted the adjournment based on the employer's representation that one of its witnesses had surgery. Cordello Aff. ¶15.

On October 15, 2004, Arbitrator Anner issued an arbitration award and opinion, finding that Trump had just cause to discharge Mr. Ghilduta. Ghilduta Dep., Ex. R.

### G.   **Other Matters**

Aside from his grievance contesting his discharge, Mr. Ghilduta did not file any grievances concerning any other workplace matters with the Union. Foti Aff. ¶15. Mr. Ghilduta did not file a grievance concerning the alleged $19,000 loan to Mr. Gjieli. Ghilduta Dep. 150-53. Mr. Ghilduta did not file a grievance concerning Trump's alleged failure to properly supervise its employees. *Id.* at 154-55.

Mr. Ghilduta's sole basis for believing that Union staff members accepted bribes is that the Union allegedly failed to represent him. *Id.* at 284-285. At no time has Mr. Foti requested or accepted money from Union members, or their employers. No one at Trump has ever offered

Foti any money, nor has he asked for or taken any money from anyone at Trump. Foti Aff. ¶¶16-17.

While Mr. Foti does not specifically recall advising Mr. Ghilduta not go to the building after he was fired, he usually advises members who are fired not go to the building. He does this because employers generally do not permit fired workers at the premises, and can use a member's post-termination presence at the building against the member during the discharge arbitration hearing. Foti Aff. ¶10.

After he was discharged, Mr. Ghilduta filed a small claims action against Trump seeking his share of Christmas tips from tenants. At his request, on April 7, 2004, the Union submitted a letter to the court in support of Mr. Ghilduta's suit to collect Christmas tips, arguing that that, contrary to Trump's claim, Christmas tips were not covered by the CBA, and that Plaintiff's small claims action was not, therefore, preempted. Ghilduta Dep. 314-15 & Ex. X.

## III.   ARGUMENT

### A.   <u>Summary Judgment Standard</u>

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986); *Raskin v. Wyatt Co.*, 125 F.3d 55, 60 (2d Cir. 1997).

The party opposing the motion "may not rest upon the mere allegations or denials . . . but must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Accordingly, it is insufficient for a party opposing the motion "merely to assert a conclusion without supplying supporting arguments or facts." *Bellsouth Telecomm., Inc. v. W.R. Grace &*

*Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal citation and quotations omitted); *Vargas v. Hill*, 152 F. Supp. 2d 315, 318 (S.D.N.Y. 2001).

### B.      Mr. Ghilduta's Duty of Fair Representation Claims Fail as a Matter of Law

Where a member claims that the union breached its duty of fair representation in the context of a grievance investigation and arbitration hearing, the member must establish two elements: "The Union's conduct must, first, have been arbitrary discriminatory or in bad faith . . . and, second, it must have seriously undermine[d] the arbitral process."  *Barr*, 868 F. 2d at 43 (quoting *Vaca v. Sipes*, 386 U.S. 171, 190 (1967) and *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 567 (1976)).  Under the first prong, mere negligence or errors in judgment are insufficient. *Cook v. Pan Am. World Airways, Inc.*, 771 F.2d 635, 645 (2d Cir. 1985).  Rather, to be actionable, a union's conduct must be "so far outside a wide range of reasonableness . . . as to be irrational." *Air Line Pilots Ass'n O'Neill*, 499 U.S. 65, 67 (1991) (internal citation and quotation marks omitted).  The second prong requires the plaintiff "prove that there was a causal connection between the union's wrongful conduct and [his] injuries." *White v. White Rose Food*, 237 F.3d 174, 179 (2d Cir. 2001) (internal citation and quotation marks omitted).

Under the Second Circuit's well-established duty of fair representation case law, Plaintiff's claims fall far short of establishing a breach.  Viewed in a light most favorable to Plaintiff, his allegations amount to nothing more than complaints about tactical decisions made by the Union, which, as a matter of law, do not violate the duty of fair representation. *Barr*, 868 F. 2d at 43-44; *Smith v. Drug, Chemical, Cosmetic, Plastics, and Affiliated Industries Warehouse Employer Local 815*, 943 F. Supp. 224, 241 (E.D.N.Y. 1996).

Plaintiff's claims fail on the additional ground that he has not asserted, much less demonstrated, as he must in order to prevail, that the Union's alleged failures had an adverse

impact on the the arbitrator's decision to sustain his discharge. *Barr*, 868 F.2d at 43; *Regan v. Soft Drink and Brewery Workers Union, Local 812*, 1995 U.S. Dist. LEXIS 4221, \*12 (S.D.N.Y. 1995), *aff'd*, 1995 U.S. App. LEXIS 39886 (2d Cir. 1995).

    1. Failure to Ensure Witnesses Appearance at the Arbitration Hearing.

    Plaintiff claims that Union attorney, Justin Cordello, failed to ensure that the tenants Ghilduta had subpoenaed, and two co-workers, Bernard Quinn and Willie Bautista, which Plaintiff had not subpoenaed, appear and testify at Plaintiff's arbitration hearing.  To succeed in this claim, however, Plaintiff must not only show that the failure to call the witnesses was arbitrary, discriminatory, or in bad faith, but he must also identify the substance of the witnesses testimony, and show that such testimony would have affected the outcome of the arbitrator's decision. *Barr*, 868 F.2d at 43-44; *Phillips v. Lenox Hill Hosp.*, 673 F.Supp. 1207, 1214 (S.D.N.Y. 1987); *Arteaga v. Bevona*, 21 F.Supp.2d 198, 207 (E.D.N.Y. 1998).  Plaintiff can make none of these required showings.

    Concerning the tenants, it was Mr. Cordello's reasoned judgment that they would not likely have been helpful to Mr. Ghilduta's case because, in his experience, witnesses who do not appear voluntarily typically do not have helpful testimony to offer.  This is a tactical decision, which, even if erroneous or even negligent upon hindsight, the Union is privileged to make. *Barr*, 868 F. 2d at 43-44 (where union's decision not to call witness at arbitration hearing was due to its reasonable belief that testimony would not be helpful, member's duty of fair representation claim fails; "tactical decisions are insufficient to show a breach of the duty of fair representation"); *Martinez v. Amalgamated Transit Union, Local 1056*, 2005 U.S. Dist. LEXIS 12252, \*21-22 (E.D.N.Y. 2005) (union attorney's strategy decisions in arbitration hearing, even if erroneous, are not actionable).  Further, Ghilduta admits that the tenants he subpoenaed were

12

not witness to any of the events leading to his discharge, thus, their testimony would have had little if any impact on the arbitrator's ruling of whether Plaintiff was fired for cause.

Fatal to his claim concerning the Union's failure to call his co-workers is Ghilduta's admission that he chose not to subpoena them. Plaintiff further admits that he does not know what the substance of their testimony would have been had they testified. Indeed, given that the employer subpoenaed Bernard Quinn to testify on its behalf, his testimony would not likely have favored Ghilduta. In any event, since Battista and Quinn admittedly did not witness the exchange between Ghilduta and Ukaj in Ukaj's office that resulted in Ghilduta's discharge, their testimony would have little or no impact on the arbitrator's decision. Absent some identification as to the substance of his co-workers testimony, and how such testimony would have changed the outcome of his hearing, Ghilduta's claim fails. *Regan*, 1995 U.S. Dist. LEXIS at *11 (without articulating how testimony would have helped, member's claim against the union for failing to call witness fails); *Phillips*, 673 F.Supp. at 1214 (failure to demonstrate substance of arbitration witness testimony was fatal to union member's duty of fair representation claim).

Finally, because Ghilduta admits that he was allowed to testify at the arbitration hearing fully about all issues he wanted to address, and that he could identify no questions that he wanted the Union attorneys to ask on cross-examination that they failed to ask, any claim that the non-appearance of the witnesses undermined the arbitration is even more dubious. *See Arteaga*, 21 F.Supp.2d at 207 (where a member was allowed to testify fully at his discharge arbitration hearing, and the union attorney cross-examined company witnesses, union's failure to call eye witnesses to testify on member's behalf did not violate its duty).

2. Delay in Arbitration Proceedings and Mr. Cordello's Failure to Object to Employer's Request for an Adjournment.

13

The undisputed facts reveal that the delay in the arbitration hearing was not a result of any arbitrary, discriminatory, or bad faith conduct by the Union, but rather a result of a) adjournment requests by the employer, which were granted by the arbitrator over objections by Union attorneys Cordello and Breen, b) the schedule imposed by the Office of the Contract Arbitrator, and c) Mr. Ghilduta's desire to seek a private attorney.   Nor can Plaintiff establish that the delay negatively impacted upon the arbitral process.  The mere length of the delay does not establish a breach. *See Saviano v. Local 32B-32J*, No. 96 CV 8136 (S.D.N.Y. 2002)[1], Tr. 231 (unpublished oral order dismissing claim against Local 32BJ by member whose arbitration took 26 months to complete).

3.  Failure to Challenge Employer's Violation of 5-Day Termination Notice Requirement.

Because Ghilduta declined to file a grievance challenging Trump's failure to notify him of the reasons for his discharge within five days of the discharge, this claim against the Union fails as a matter of law since Plaintiff admits he was aware[2] at this time how to file a grievance with the Union. *See Carrion v Local 32B-32BJ*, 2005 U.S. Dist. LEXIS 4417, *29-31 & n.12 (S.D.N.Y. 2005) (where member knew of grievance process, but failed to file grievance concerning alleged discrimination, his DFR and discrimination claims against the union for failing to address the discrimination were dismissed); *Badlam v. Reynolds Metals Co.*, 46 F.Supp.2d 187, 201 (N.D.N.Y. 1999) ("Without the filing of a written grievance or otherwise specifically requesting that the Union pursue a grievance to the next step, the Union was under no obligation to take further action on [member's] behalf").

4.  Mr. Foti's Failure to Obtain the Videotape and Advice to Ghilduta to Stay Away from the Building.

---

[1] The relevant pages of the transcript of this decision are attached to the affidavit of Katchen Locke as Exhibit E.
[2] Even if Ghilduta lacked actual knowledge of the grievance process, he is imputed with such knowledge. *See* discussion *infra* at Section 5.

Plaintiff claims that the Union breached its duty of fair representation because Union Delegate Ed Foti allegedly failed to obtain a copy of a videotape of the building lobby from December 20, 2002, the day of Plaintiff's discharge. However, Ghilduta admits that the videotape he wanted Foti to obtain contained footage of the lobby, where none of the events leading to Ghilduta's discharge took place. Accordingly, this allegation fails not only on the ground that it constitutes, at most, nonactionable negligence, *Arteaga*, 21 F.Supp.2d at 207 (union's failure to obtain copy of allegedly exculpatory videotape insufficient to establish breach since it constituted mere negligence), but also because Ghilduta cannot demonstrate that the failure had any impact on the arbitrator's decision.

Likewise, that Mr. Foti may have advised Plaintiff to stay away from the building cannot possibly constitute a breach. Not only is this sound advice as a general matter to discharged employees, in this instance, where Ghilduta had already been escorted off the property by security guards, it was particularly sensible.

5. Failure to Investigate Plaintiff's Claims of Bribery by Trump Supervisors.

Ghilduta claims the Union violated its duty to him by failing to investigate his allegations that Trump supervisors were taking bribes from employees, and that his threat to expose the bribe-taking was the real reason for his discharge. However, Ghilduta admittedly declined to file a grievance about the bribe-taking. While Ghilduta claims that he was unaware of the grievance process at the time he paid the bribes, and did not learn of it until he was fired[3], he did not include the bribe claim even in his discharge grievance. Regardless, whether Ghilduta had actual knowledge of the grievance process at the time of the alleged bribe-taking is immaterial, because

---

[3] Ghilduta admits, however, that he learned about the grievance process simply by asking another worker, Ioan Bitis. He also admits that prior to this discharge, he had no need for the Union's assistance.

he is imputed with such knowledge. *See Smith*, 943 F.Supp. at 240 (members are imputed with knowledge of the grievance procedures set forth in their collective bargaining agreements); *Tran v. Tran*, 847 F.Supp. 306, 311 (S.D.N.Y. 1994) (same), *rev'd on other grounds*, 54 F.3d 115 (2d Cir. 1995).

Even if he had properly raised these claims through the grievance process, Foti's response, as alleged by Ghilduta, was entirely rational; he told Plaintiff that he would need to provide proof.  Mr. Ghilduta admittedly declined to offer any.  In any event, Ghilduta admits that he was permitted to, and did, testify freely about these bribery allegations at his arbitration hearing.  Accordingly, Ghilduta can establish neither that the Union's conduct was arbitrary, nor that it had any impact on the outcome of his discharge arbitration.

6. The Union's Bribe-taking.

Since the sole basis for Ghilduta's claim that Union representatives, including Foti[4], accepted bribes is his conclusory assertion that the Union failed to represent him, the claim fails as a matter of law. *See Barr*, 868 F.2d 36 (dismissing as conclusory member's duty of fair representation allegations of conspiracy between union and employer).

7. The Union's Failure to Remove Foti as Ghilduta's Delegate.

Because Ghilduta has failed to establish any facts demonstrating that Foti's conduct rose to the level of a breach of the duty of fair representation, the Union's failure to remove him as Plaintiff's delegate must also necessarily fail.

---

[4] Foti did not request or accept any bribes.

16

8. The Union's Failure to Remove Arbitrator Anner.

Plaintiff has articulated no basis for seeking Arbitrator Anner's removal, such as bias or conflict of interest.  Even if he could, the Union's decision not to seek the arbitrator's removal would be, at most, a tactical decision.   Nor can Ghilduta show that the failure to have Arbitrator Anner removed had any impact on the arbitration decision.  *See Kavowras v. New York Times Co.*, 2004 U.S. Dist. LEXIS 14266, *29-30 (S.D.N.Y. 2004) (dismissing DFR claim that union failed to seek recusal of allegedly biased arbitrator where member failed to show that failure impacted arbitration decision), *aff'd*, 2005 U.S. App. LEXIS 9489 (2d Cir. 2005).

### D.   Plaintiff's Claim for Punitive Damages Against Local 32BJ Fails as a Matter of Law.

Since punitive damages are not recoverable in a duty of fair representation action against a union as a matter of law, Plaintiff's request for such damages against Local 32BJ should be dismissed.  *International Brotherhood of Electrical Workers v. Foust*, 442 U.S. 42, 52 (1979); *Ghartey v. St. John's Queens Hosp.*, 727 F. Supp. 795, 798 (E.D.N.Y. 1989); *Guzman v. Local 814, Int'l Bhd. of Teamsters*, 1984 U.S. Dist. LEXIS 14799, *7 (S.D.N.Y. 1984).

## IV.   CONCLUSION

Based on the foregoing, Local 32BJ respectfully requests that this Court grant its motion for summary judgment and dismiss the Amended Complaint with prejudice.

Dated: September 22, 2005
      New York, New York

Respectfully Submitted,

Office of the General Counsel

By: _____
Katchen Locke, Esq. (KL 3724)
Associate General Counsel
Service Employees International

17

Local 32BJ, AFL-CIO
101 Avenue of the Americas
New York, New York 10013
Phone: (212) 539-2941
Fax: (212) 388-2062

Attorneys for Defendant Local 32BJ